IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PHILIP SHROPSHIRE,  )
       Plaintiff,  )
       v.  )  C.A. No. 2:17-cv-00935-DSC
CHRIS GALLOWAY, ZACHARY  )
REIDER and FIELDWORKS LLC,  )
       Defendants.  )

# RESPONSE TO DEFENDANT'S 4 16 STATEMENT

## I. Preface

Well here are we again. I just want to state that we feel that the court asked me to come up with a more complete statement and I believe that my amended complaint did create a fuller picture for the court.

I'm somewhat baffled at the response by Fieldworks counsel. It doesn't seem that they actually read the amended complaint that I presented nor do they seem to know that the laws that they challenge are a settled matter within the circuit. For example, they insist that I can't claim penalties for personal liability or personal capacity under Title VII when in paragraph six of my amended complaint I make it very clear that I'm only seeking damages in their personal capacities under Section 1981, and if I submit yet another amended complaint I could sue them in their personal capacities under the PHRA as well. We actually do state claims by showing pretext multiple times and as defined by the precedential appeals court ruling *Connelly v. Lane Construction* that defines stating a claim. It turns out that

1

while they state on page two of their memorandum of law that I offer conclusory allegations the claims of pretext I make are based on exactly what I experienced and the exact statements that your manager has made to me and what you yourselves have stated to the EEOC where you introduced another charge of insubordination which had never happened when I worked at Fieldworks mainly because I had only worked under Zachary Reider a few days and he had never given me an order. Not a single order.

So, our argument will be over the next few pages is that we have stated a claim, multiple times under *Connelly*. We also think that the action that I was fired for is a subjective event that lends itself to a credibility determination and that credibility determinations preclude summary judgment, certainly before discovery. (If you dismiss my case before discovery, you're not allowing me to prove my case.) We are also of the belief that a jury can infer an illegal motive if the reason given by the defendants isn't true. I was neither disruptive or insubordinate at any time during my tenure as a high achieving manager and trainer for Fieldworks. We also further outline the retaliation claim.

Let us begin.

## II. Affirmative Arguments

### 1. **I have stated a claim as defined by the controlling and Precedential Third Circuit appeals court case of *Connelly vs Lane Construction*.**

First, it should be stated that there are three lines of attack that I'm seeking in my case. I feel that I have been discriminated against because of disparate treatment, disparate impact and retaliation. We don't have direct

2

evidence as of yet for disparate treatment, which can be proved either by direct or circumstantial evidence. I don't think Zachary Reider is dumb enough to call me "nigger". Very few people are. Or at least we don't have this evidence before discovery. This means that you have to prove your case by circumstantial evidence or pretext.

This is how that strategy is defined in one case or Nesselrotte v. Allegheny Energy, Inc.:

> **Plaintiff may survive summary judgment, "by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Keller, 130 F.3d 1101 at 1108 (quoting Fuentes, <u>32 F.3d 759 at 763</u>). Plaintiff points to several pieces of evidence to establish issues of material fact as to whether Defendants' legitimate, non-discriminatory reasons were pretextual.**

The controlling case in Connelly adds to this.

> **B. The Elements Necessary to State a Claim**
>
> **We thus begin by taking note of the elements Connelly must plead to state her claims. With respect to her disparate treatment claim, Title VII makes it an "unlawful employment practice for an employer ... to discriminate against any individual ..., because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). See also Desert Palace, Inc. v. Costa, 539 U.S. 90, 92-93 (2003). In 1991, Congress amended Title VII to further specify that, "[e]xcept as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). In Watson v. Southeastern Pennsylvania Transportation Authority, we interpreted that**

> amendment to apply only to the category of discrimination cases that involve a "mixed-motive." 207 F.3d 207, 214-20 (3d Cir. 2000). Generally speaking, in a "mixedmotive" case a plaintiff claims that an employment decision was based on both legitimate and illegitimate reasons. Such cases are in contrast to so-called "pretext" cases, in which a plaintiff claims that an employer's stated justification for an employment decision is false.

I believe that this is pretext case. By the way, we ask the court to ask what I was fired for. What disruptive thing did I do? Is it actually true or is there a roomful of 30 black people telling you different? Why send the disruptive person to work? I heard that tennis phenom Nick Krygios threw his chair on the court today. That sounds really disruptive. Was he allowed to continue to play or was the match forfeited? Just for the record, the match was forfeited. I was allowed to work for six hours. Now tell me: Was I "disruptive"? Or insubordinate? How can I be insubordinate when I was never given an order? Let alone disobeyed one. The defendant's actions fall under the Ginsburg rubric of:

> "The fact finder may properly take into account weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action."

The reasons given by Defendant Zachary Reider for my termination are subjective and don't make any sense. They're not worthy of credence.

## 2. Summary judgment is precluded in cases that involve credibility determinations.

Here's the thing that defines the case: What happened the morning of July 20th? I'm making the claim that nothing happened, much. Or nothing happened that wasn't usual.

4

Usually, if there is a problem or a concern that we have about the voter registration process, then that would be the place it would be aired. I said two things that day: I spoke about the problems we had when people don't give us social security numbers. Some canvassers had been putting in all fives. Because I worked so hard and canvassed up to 200 people per day, I actually canvassed somebody who processed voter registration forms for the county. She told me that they get a lot of our apps but stop putting in all fives for the social security numbers. She also made it clear that they could process the voter registration forms without a social security number. So I shared this information with the staff. I was also kind of worried, from my emails with Zach (see amended complaint April 2nd and today's Statement of Material Facts.) that he didn't take this law seriously. So I talked about ACORN and the law against using quotas to fire people. I think I spoke for about one minute. And then I went to work. Zach never said I did something disruptive or evil. Or untoward. So I went to work without there being so much as a peep. When I got back I was told I was "disruptive" and was fired.

Here's the evidence for me being "disruptive". One white teen from Idaho says that. Everybody else in the room, who was black, says that I wasn't. And they thanked me for what I said. So its one guy versus 30 African Americans. We believe that a credibility determination has to be made here, which means we need a jury to weigh in. Its a subjective issue. I believe that the jury will agree with me but it is a subjective determination, based on credibility.

The case law is pretty clear on this. Credibility determinations preclude summary judgment either under 12 b 6 or 56.

Here are some Third Circuit cases that state this. *Devine v. Pittsburgh Bd of Public Education:*

> Ultimately, it is the role of the jury to determine which version of events to believe. In *Hendricks v. Pittsburgh Public Schools*, 2015 WL 540030 (W.D. Pa. February 10, 2015), Judge Nora Barry Fischer held that similar same-race discrimination claims by another teacher at Faison survived summary judgment.

In accordance with the foregoing, the motion for summary

And:

**Tomaski v. Armstrong World Indus Inc.**
2:12-cv-140, at *4 (W.D. Pa. Dec. 6, 2012)

> In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. See *Matreale v. New Jersey Dept of Military & Veterans Affairs*, 487 F.3d 150, 152 (3d Cir. 2007). Final credibility determination on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. See *Josey*, 996 F.2d at 632.

And:

**Standen v. Gertrude Hawk Chocolates, Inc.**
UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA Feb 19, 2014

> proven to be true, a reasonable jury could infer that Calachino, Black and Pope's intentional actions created an environment conducive to securing, maintaining and wielding power and control over Standen against her will. See *Mandel*, 706 F.3d at 169 (stating that the "inherently subjective question of whether particular conduct was unwelcome presents difficult problems of proof and turns on credibility determinations," which can preclude summary judgment).

6

And:

> **Taylor v. Harrisburg Area Cmty. Coll.**
> UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
>
> The Third Circuit has noted, "Title VII does not have a corroboration requirement" and, therefore, the granting of summary judgment in a Title VII case cannot turn on a credibility determination because such determinations are for the finder of fact. *Durham Life Ins. v. Evans*, 166 F.3d 139, 147 (3d Cir. 1999).

Again, a jury could decide that the white teen is right over the observations of 30 or so African Americans. But a jury should get that chance.

## 3. Temporal Proximity and the Retaliation and Whistleblower Claims

I believe that I was engaging in protected activity when talking to Mr. Reider by way of emails on July 18th. I was definitely worried about the fate of black staffers and also worried about the fate of Joel Bracy, who had the audacity to want to come in later for work on the 19th I think so he could attend the viewing of a former canvasser that I worked with who had died unexpectedly. By the way, if you're asking what kind of awful person that Zachary Reider is, he went on to fire Joel right in front of me the next day. Joel was told the same story that Justin was about duplicate registrations and when Joel asked for proof, just like Justin, he was shown nothing. It should be noted that no proof has been presented that Justin ever created duplicate registrations, other than the ones that management had asked us for! I had to intervene in order to save Zach from what would have been

7

probably a vicious beating by Joel. I sometimes think I shouldn't have.

Here's how the courts say you can prove a temporal proximity case of retaliation for engaging in protected speech or activity.

https://casetext.com/case/lichtenstein-v-univ-of-pittsburgh-med-ctr?q=%22temporal%20proximity%22%20AND%20retaliation&p=1&tab=keyword&jxs=3cir&sort=relevance&type=case

**To demonstrate a prima facie case of causation, Lichtenstein must point to evidence sufficient to create an inference that a causative link exists between her FMLA leave and her termination. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279–81 (3d Cir.2000). When the "temporal proximity" between the protected activity and adverse action is "unduly suggestive," this "is sufficient standing alone to create an inference of causality and defeat summary judgment." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir.2007). "Where the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.' " Id. (quoting Farrell, 206 F.3d at 280).**

**Here, Lichtenstein was terminated on January 10th, just seven days after she invoked her right to FMLA leave, and just three days after Lidey returned from vacation. Had things gone according to UPMC's plan, even less time would have elapsed. Both Lidey and Brown testified that Lidey's plan was to fire Lichtenstein on January 8th (the first day Lidey and Lichtenstein were scheduled to work the same shift following Lidey's return from vacation). "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity," id. at 233, the temporal proximity in this case is in the realm of what this Court and others have found sufficient at the prima facie stage, see, e.g., Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir.1989) (finding two days unduly suggestive); Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 283 (6th Cir.2012) (three weeks); Wierman v. Casey's Gen. Stores, 638 F.3d 984, 994 (8th Cir.2011) (four days); cf. McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir.2008) (five days in Title VII retaliation case).**

8

No matter how you slice it, two days after the emails, or six hours after mentioning the state law against quotas, it would seem that I have a very strong case of retaliation, under both civil rights law and also the Whistleblower Act, which I'm still working on moving to the state courts.

Again, I didn't go into detail about this when forming the complaint. If the court wants me to add these arguments to an amended complaint, then this can be done. The only reason it wasn't done so earlier is that my reading of the law told me it wasn't required. But I could be wrong.

### 4. Both Section 1981 and the PHRA, while not asked for here, cover personal liability.

Again, I find myself puzzled by defendants claims on why they don't think Reider or Galloway is liable in their personal capacities. Its clearly the law of the land in the third circuit that they clearly are.

Here are some cases again:

**Scholly v. JMK Plastering, Inc.**
**CIVIL ACTION NO. 07-cv-4998, at \*5 (E.D. Pa. Jun. 25, 2008**
**Plaintiff's Response therefore correctly asserts that section 955(e) of PHRA allows for individual liability**

And:

**Gula v. Noonan**
**CIVIL ACTION NO. 3:14-2210, at \*9 (M.D. Pa. Nov. 9, 2017)**
**43 Pa. Stat. §955(a), (d)-(e).**
**The definition of the term "employer" in the PHRA specifically "includes the Commonwealth or any political subdivision or**

9

board, department, commission or school district thereof...." 43 Pa.Stat. §954(b). "The Pennsylvania courts have construed the language of this definition to be a waiver of sovereign immunity in actions arising under the PHRA." Mitchell v. Miller, 884 F.Supp.2d 334, 380 (W.D.Pa. 2012) (citing City of Philadelphia v. PHRC, 684 A.2d 204, 208 (Pa.Commw.Ct. 1996). Thus, "the [PSP] Defendants are not immune from liability under Pennsylvania law for actions taken in violation of the PHRA's anti-discrimination and anti-retaliation provisions." Id.

Moreover, an aiding and abetting claim against an individual employee is viable under the PHRA. See Dici v . Commonwealth of Pa., 91 F.3d 542, 552 (3d Cir. 1996); Sampson v . Methacton Sch. Dist., 88 F. Supp. 422, 446 (E.D. Pa. 2015); Nolan v . Duffy, 542 F. Supp. 2d 429, 432 (E.D. Pa. 2008); Thourot v. Monroe Career & Technical Institute, Civil No. 14-1779, at 21 n. 12, 2016 WL 6082238, *8 n. 12 (M.D.Pa. Oct. 17, 2016).

And:

### Rodrigues v. Motorworld Auto. Grp., Inc.
CIVIL ACTION NO. 3:16-CV-1674 (M.D. Pa. Mar. 17, 2017)
Accordingly, employees may be held individually liable if they were "personally involved" in the discriminatory conduct at issue, and either "intentionally caused" the infringement of the plaintiff's § 1981 rights or "authorized, directed, or participated in the alleged discriminatory conduct." Id.; see Brown v. TD Bank, N.A., No. 15-5474, 2016 WL 1298973, at *9 (E.D. Pa. Apr. 4, 2016). A supervisor may be found to have been personally involved with the discriminatory conduct if he was "grossly negligen[t] in the supervision of [his] subordinates who committed the wrongful acts" or "deliberate[ly] indifferen[t] to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring."

And:

### Suero v. Motorworld Auto. Grp., Inc.
CIVIL ACTION NO. 3:16-cv-00686 (M.D. Pa. Jan. 31, 2017)
Accordingly, employees may be held individually liable if they were "personally involved" in the discriminatory conduct at issue, and either "intentionally caused" the infringement of the plaintiff's § 1981 rights or "authorized, directed, or

10

participated in the alleged discriminatory conduct." Id.; see Brown v. TD Bank, N.A., No. 15-5474, 2016 WL 1298973, at *9 (E.D. Pa. Apr. 4, 2016). A supervisor may be found to have been personally involved with the discriminatory conduct if he was "grossly negligen[t] in the supervision of [his] subordinates who committed the wrongful acts" or "deliberate[ly] indifferen[t] to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring."

And:

> Connearney v. Main Line Hosps., Inc.
> CIVIL ACTION No. 15-02730 (E.D. Pa. Oct. 28, 2016) Cited 4 times
> "Based on the theory that only supervisory employees can share the discriminatory purpose and intent of the employer, such supervisors can be held personally liable under an aiding and abetting theory for their own direct acts of discrimination or their failure to take action to prevent further discrimination." Brown v. TD Bank, N.A., at *10 (E.D. Pa. Apr. 4, 2016); see also Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C., 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998); Dici v. Com. of Pa., 91 F.3d 542, 552-53 (3d Cir. 1996). The record establishes a genuine issue of material fact as to whether Hogan discriminated against Connearney her based on her age.

Casetext is a wonderful resource and I could have gotten the court a zillion more cases but I stopped at three or so. I don't think this issue is debatable. Supervisors can be held liable under Section 1981. Or at least that's what case law in the Third Circuit says.

### III. Direct Rebuttal to Defendants 4 16 statement

I will do this as quickly as I can. I'm going to skip to their page 4 and take on their "Argument" section. I think the

11

court can determine for itself whether the extended amended complaint, today's statement of material facts and this statement itself is providing the court with enough "factual matter". Yes, there are some personal statements about Mr. Reider and even some conclusions about the law but there are plenty of facts as well. I include these statements because the court should get an idea of what its like to work for a sociopath like Zachary Reider. I also remind the court that *Connelly vs. Lane Construction* (see above) states that you should look at the factual matters, of which there are plenty, even if there are subjective or more colorable elements in the complaint or even this statement.

1. <u>I really never claim that Title VII covers individual defendants in their personal capacities</u>.

> **A. Plaintiff's Claims Against Individual Defendants Gallaway and Reider Must Be Dismissed As a Matter of Law.**
> **1. Plaintiff's Title VII Claims Must Be Dismissed Against The Individually Named Defendants Because Title VII Does Not Permit Individual Liability.**

I don't ever believe that I made this claim. Small thing possibly. When you get jury instructions they'll be sued in their professional capacities under Title VII and they'll be sued in both their professional and personal capacity instruction under Section 1981. Also see section 4 under Affirmative Arguments of this statements.

2. <u>It isn't really disputed that Fieldworks LLC and Zachary Reider and Chris Galloway are my employers.</u>

> **Plaintiff Fails To Allege Any Facts Showing That Individual Defendants Gallaway Or Reider Are "Employers" Under The PHRA, Section 1981, or PA Whistleblower Law.**

I don't think it is disputed or if it is disputed it isn't disputed intelligently. Are you claiming that you're not my employer? Who fired me then? Why did you respond to the EEOC investigation if you're just a bunch of strangers? Baffling. I don't get this one.

3. <u>All of the documents submitted point to case of disparate treatment using pretext as a reason.</u>

This refers to this on their page seven.

### Plaintiff Has Not Pled Any Facts To Support A Claim of Discrimination (Count I).

I guess I'm asking the court to read the 20 page amended complaint and the 40 or so pages submitted today for a different point of view.

4. <u>We have articulated the temporal proximity retaliation claim.</u>

On page 8 of their 4 16 2018 statement Defendants say this:

### Plaintiff Has Not Pled Any Facts to Support A Claim Of Retaliation (Count II).

I go more into this in section 3 under Affirmative Arguments above. I would hope that would answer their questions.

5. <u>The Whistleblower Act goes back to the original complaint because of 15 (c)'s Relation Back of Amendments.</u>

I'm actually running out of things to pick on. But I wanted to counter this statement on their page 10 where they say:

13

Plaintiff alleges that he was terminated on or about July 20, 2016. (Sec. Am. Compl. ¶ 14). For Plaintiff to have filed his whistleblower claim within the WPL's 180-day statute of limitations period, the claim needed to be filed on or before January 16, 2017. Plaintiff's WPL claim, however, was first filed on April 2, 2019, which was 806 days after the statute of limitations had run. Because Plaintiff's WPL claim was filed well outside of the 180-day statute of limitations period, the claim is time-barred, and accordingly, it must be dismissed. Livingston ex rel. Livingston v. Borough of McKees Rocks, 223 F. App'x 84, 89 (3d Cir. 2007) (Upholding dismissal of WPL claim that was filed outside the 180-day limitation period).

Well, 15 (C) would seem to allow this. Plus, the Whistleblower Act was in the original complaint. This is 15 (c)

> (c)  **Relation Back of Amendments.**
> (1)  When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
> (A)  the law that provides the applicable statute of limitations allows relation back;
> (B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or
> (C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i)  received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii)  knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

So I think I'm covered there.

## IV: Summary Statement and Seeing the Case in The Most Positive Light for the Plaintiff

Well I believe that the court is supposed to look at the case in the light most favorable to the plaintiff as this stage of the proceedings. Well what would that look like? That would mean that when looking at the morning of July 20th and finding that 30 or so African Americans didn't find me to be the least bit "disruptive", you would choose my that side. When looking at the retaliation claim and looking at when and what I spoke about was protected speech, and me getting fired hours later, then the court would look at my side as being the true side. Then there's the common sense aspects of the case. Why send a truly "disruptive" employee out to talk to 200 people, especially if you think that he was creating fake voter registrations, implied by the Defendants in their EEOC statement but certainly never proven. I was never given a single order by Zachary Reider either orally or in writing. So how was I insubordinate? Does it seem logical that a high producing manager and trainer, who had registered 500 new voters, would suddenly become "disruptive" as soon as the white boss shows up? (And for the record I've had great white bosses.) I don't think this is a close call. We ask the court to dismiss the Defendants 4 16 requests in full.

Respectfully submitted,

Philip Shropshire
5 16 19

## Certificate of Service

I certify on this 16th day of May that I have personally delivered a copy of this to the Clerk's office or will mail it today and will soon email a copy of this motion to Defendant's counsel, unless its posted electronically first.