IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP SHROPSHIRE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:17cv935 |
| | ) | **Electronic Filing** |
| **CHRIS GALLOWAY**, | ) | |
| **ZACHARY REIDER**, and | ) | |
| **FIELDWORKS LLC**, | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION**

Plaintiff commenced this action seeking redress for his termination from Fieldworks, LLC, where he worked for six or seven weeks in the summer of 2016 as a "canvasser" attempting to register new voters. Plaintiff claims that his firing was the result of racial discrimination and retaliation. Plaintiff's original complaint was dismissed for failure to state a claim under Rule 12(b)(6), with leave to amend. Plaintiff filed an amended complaint along with numerous submissions that relate to the standards employed at summary judgment. Presently before the court is defendants' motion to dismiss the amended complaint. After being granted leave and filing the current submissions, it has become clear that plaintiff's efforts to set forth facts making a plausible showing of entitlement to relief for race discrimination and retaliation are inherently deficient. Accordingly, defendant's motion will be granted as to the federal and state discrimination and retaliation claims and the court will decline to exercise supplemental jurisdiction over any other state law claim that might be lurking in plaintiff's submissions.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868

F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability." Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,'

'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

It also is well settled that pleadings filed by *pro se* litigants are to be construed liberally. McNeil v. United States, 508 U.S. 106, 113 (1993); Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). And in such circumstances the court has an obligation to "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins, 293 F.3d at 688 (quoting Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).

But the above-referenced standards are not to be read as a license to excuse or overlook procedural shortcomings in pleadings submitted by those who choose to represent themselves. McNeil, 508 U.S. at 113 ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Thus, a complaint drafted without the benefit of counsel nevertheless must comply with Federal Rule of Civil Procedure 8(a). And, while Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claims showing that the pleader is entitled to relief," Rule 12(b)(6) is not without meaning. Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002). It follows that in order to comply with the applicable pleading standards "more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Id. at 142 - 43 (quoting Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1357 at 318 (2d ed. 1990)). This principle appears to be even more well-grounded after Twombly.

The complaint and record as developed in conjunction with the pending motion when read in the light most favorable to plaintiff establishes the background set forth below.

Plaintiff is an African American male who began employment with Fieldworks in the first days of June of 2016. Amended Complaint (Doc. No. 27) at ¶¶ 5, 8. Plaintiff was hired by Joel Williams, who also is African American. He was hired to canvass local neighborhoods and recruited individuals to become registered voters. Id. ¶¶ 10-11. He worked in neighborhoods that were predominately populated by African Americans and delivered a high level of productivity. Id. at ¶¶ 10-11. Williams led plaintiff to believe he was averaging 19.6 voter registrations per day. Id. at ¶ 10.

Plaintiff's high level of productivity was well received and he quickly was promoted to the position of field manager and received a two dollar an hour raise. Id. at ¶ 9. Plaintiff trained several other canvassers who were likewise very productive. Id. at ¶ 10. Williams never registered any complaints about plaintiff's work performance. Id.

Williams left the employment of Fieldworks in July of 2016 and was replaced by Zachary Reider, "a white teenager from Idaho who clearly knew nothing about [the City of Pittsburgh.]"

4

Id. at ¶ 12. Reider was a "public Bernie Sanders supporter" who plaintiff believes should not have been hired for a variety of reasons. Id. He immediately was perceived by the staff as "an abusive, mean spirited, sarcastic boss who seemed to hate the people he was supposed to manage and nurture." Id. It is plaintiff's belief that Reider ran the office with "just a toxic brew of arrogance, stupidity and incompetence." Id. at ¶ 21. Plaintiff received a lot of complaints from his fellow workers about Reider even though there was little plaintiff could do about Reider's management style. Id. at ¶ 12.

Matters came to a head on July 18, 2016, when plaintiff received an email from Reider directing plaintiff to show up for a meeting on his scheduled day off. Id. at ¶ 13. During the email exchange that followed it became "apparent to [plaintiff] that [Reider] had no idea about the history of ACORN and the local Pittsburgh District Attorney Stephen Zappala, or the man who put ACORN canvassers in jail." Id. Plaintiff sent Reider an email begging him not to "break Pennsylvania state law" by tying pay to quotas on the production of voter registrations. Id. at ¶ 13. In the email plaintiff cited a Pennsylvania statute governing solicitations of voter registrations and referenced some previous media publications involving legal challenges that had occurred in the region. Id.

Plaintiff then went to work on July 20, 2016, and attended the morning meeting of staff. Id. at ¶ 14. Based on "the very disturbing and arrogant tone from [Reider's] emails[,] [plaintiff] simply didn't believe that he was going to respect the law on quotas and voter registrations that [have been] established here in Pennsylvania." Id. As a result, plaintiff mentioned two things in the meeting. The first was a conversation plaintiff had with the representative of the County office that was collecting the registrations generated by plaintiff and the local staff. Plaintiff announced that the County worker had indicated that the registration applications could be accepted without a social security number, which had been a problem for plaintiff and his co-

workers because people did not want to give them their social security numbers when completing the application. Plaintiff's Response to Defendant's April 16, 2019, Statement (Doc. 33) at p. 5. So plaintiff told the staff that they could complete the applications in this manner and still have them accepted by the County. Id.

The second was that plaintiff felt and did "tell everyone in our mostly black office about the voter registration statute and the rule against quotas." Amended Complaint (Doc. No. 27) at ¶ 14. In doing so plaintiff "talked about ACORN and the law against using quotas to fire people." Plaintiff's Response to Defendant's April 16, 2019, Statement (Doc. 33) at p. 5. Plaintiff did this to protect Fieldworks and to protect Reider from himself. Amended Complaint (Doc. No. 27) at ¶ 14.

Plaintiff worked the entire day and returned with 15 voter registrations. Id. at ¶ 15. Reider then fired him for being disruptive. Id. Fieldworks added another charge of insubordination at the EEOC investigation. Id.

Several weeks later Reider fired two other African American workers for not bringing in 15 voter registrations per day, but left white canvassers remain employed when they were only producing 10 voter registrations per day. Id. at ¶ 16. Plaintiff learned of this and helped these individuals prepare their EEOC complaints. Id.

Plaintiff seeks to establish that he was fired because of his race and that defendants' explanations are "a host of pretextual reasons." Id. at ¶ 18. These include shifting reasons – first being "disruptive" and then "insubordinate;" *post hoc* rationalizations, treating white workers better and holding them to lesser standards, falsifying the EEOC statement by indicating plaintiff was "disruptive" and an overall pattern of racial discrimination in defendants' termination decisions. Id.

6

Defendants move to dismiss the amended complaint for a variety of reasons. Among these are that plaintiff has failed to plead facts to give rise to a plausible showing that he was fired because of his race. They assert that merely alleging minority status and a termination are insufficient to make a plausible showing of termination because of race. And plaintiff's efforts to set forth a retaliation claim fail for essentially the same reason: the amended complaint fails to contain facts that make a showing that plaintiff engaged in protected activity under Title VII and § 1981 and there was a causal connection between any such activity and plaintiff's termination.

Plaintiff's amended complaint does fail to plead facts that set forth a prima facia case of disparate treatment based on race. It is well settled that to establish a claim under Title VII, the Pennsylvania Human Relations Act ("PHRA") or § 1981, a plaintiff must first establish a *prima facie* case of discrimination.[1]

There is no talismanic formula for presenting a prima facie case. Jones v. School District of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999) ("the elements of a prima facie case depend on the facts of the particular case"). The relevant inquiry is whether the plaintiff has suffered an adverse employment action under circumstances which raise an inference of unlawful

---

[1] Claims brought pursuant to Title VII and the PHRA generally are governed by and analyzed under the same standards. See Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 318–19 (3d Cir.2008) (applying the same standards of review and analysis to claims of disparate treatment brought pursuant to Title VII and PHRA); Fogleman v. Mercy Hospital, Inc., 283 F.3d 561, 567 (3d Cir. 2002) ("the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently") (citing Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996)); see also Simpson v. Kay Jewelers, 142 F.3d 639, 643–44, n. 4 (3d Cir. 1998) (same); Zezulewicz v. Port Auth. of Allegheny Cnty., 290 F. Supp.2d 583, 601 (W.D. Pa.2003) (noting that discrimination claims brought under the PHRA are analyzed under the same standards as their federal counterparts). Likewise, "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009) (citing Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999). For ease of administration plaintiff's disparate treatment and retaliation claims under analyzed together.

discrimination.  Waldron v. SL Industries, Inc., 56 F.3d 491, 494 (3d Cir. 1995).  Plaintiff's burden at this step is "minimal" and is viewed as a means of presenting a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.  Id.; see also Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978).

In general, a plaintiff may establish a prime facie case by demonstrating that (1) he is a member of a protected class, (2) he is qualified for the position, (3) he suffered an adverse employment action, and (4) the circumstances raise an inference of discrimination, such as where similarly situated individuals outside the protected class were treated more favorably.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002); see also Sheridan v. E. I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 n. 5 (3d Cir. 1996) (en banc), cert. denied, 521 U.S. 1129 (1997) (discussing nature and purpose of prima facie case).  The central focus of the inquiry is always whether the employee is being treated less favorably because of a protected trait, such as race.  Pivirotto, 191 F.3d at 352 (quoting International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977)).  In short, the plaintiff must be able to establish facts that are "adequate to create an inference that an employment decision was based on illegal discriminatory criterion."  Id. at 355 (quoting O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996)); accord Jones, 198 F.3d at 410-11 (same); Goosby v. Johnson & Johnson Med. Inc., 228 F.3d 313, 318-19 (3d Cir. 2000) (same).

Plaintiff has failed to allege facts that set forth a plausible showing that his race was a motivating or substantial factor in the termination decision.  He has alleged and fairly supported his position that he went into the meeting on July 20, 2016, and announced to both staff and Zachary Reider that tying voter registration to quotas was against the law in Pennsylvania and that registration forms could be completed and processed without a social security number.  And

he did this in a setting where he was and the staff primarily were African American and Reider was Caucasian.

But as defendants aptly have observed, plaintiff's pleading burden at this point is to establish something more than he was African American and Reider was Caucasian. He must advance facts that raise a sufficient inference that he was fired because of his race. See Dixon v. Women's Christian Alliance Foster Care Agency, 2014 WL 5393541, *4 (E.D. Pa. Sept. 26, 2014) ("As stated, to assert a viable claim under § 1981, Plaintiffs must allege facts showing that they were terminated because of their race, not because of their views of race or because of someone else's race."). And while plaintiff may have perceived that he and the other staff members were in jeopardy because of Reider's lack of understand as to state law and acceptable local practices, none of the allegations leading up to and pertaining to defendant Fieldwork's decision to terminate plaintiff are imbued with racial animus or give rise to an inference that the same was a play in the decision.

Moreover, plaintiff's submissions make clear plaintiff needs discovery to raise an inference that post-termination events supply evidence of racial bias to support plaintiff's claims. For example, he admits that he does not have any direct evidence as to disparate treatment and discovery is needed to establish that the reason of disruption or insubordination is/are pretextual. See Response to Defendant's 4 16 Statement (Doc. 33) at pp. 2-3. All of his colleagues would say he wasn't disruptive. Id. at 5. And his co-workers who were terminated around or after his termination have pursued discrimination claims as well. See Plaintiff's Statement of Material Facts (Doc. No. 34) at p.3, 5 (referencing a declaration by Joel Bracy introduced in co-worker Justin Everett's case then before Judge Peter J. Phipps.); Statement of Material Facts at p. 5, ¶ 15. Other colleagues who were terminated later also have advanced race discrimination claims contending that they were fired for not meeting quotas while white canvassers were not held to

the same standards. Amended Complaint (Doc. No. 27) at ¶ 16. And certain co-workers or former supervisors would offer their opinion that Reider was a poor director. Amended Complaint (Doc. No. 27) at ¶ 16.

All of plaintiff's anecdotal information that he intends to generate through discovery does not cure the fundamental deficiency of his amended complaint. At this juncture he must advance facts that raise a fair inference that his race was a causal factor in the termination decision. He cannot advance a claim of pretext by merely "showing" that the defendant was wrong or mistaken in its decision. See Fuentes v. Perski, 32 F.3d 759, 765 (3d Cir. 1994) ("To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). The actual factual allegations of plaintiff's amended complaint, even when augmented by all of his supplemental submissions, fall short of that required showing. Thus, it would be inappropriate to permit plaintiff to resort to an approach that puts the cart before the horse.

Plaintiff's attempt to plead a claim for retaliation falls short for essentially the same reasons. A prima facie case of retaliation requires the plaintiff to proffer evidence demonstrating the following: "(1) [he] engaged in protected conduct; (2) after or contemporaneous with engaging in that conduct, [his] employer took an adverse action against [him]; (3) the adverse action was 'materially adverse'; and (4) there was a causal connection between [his] participation in the protected activity and the adverse employment action." Hare v. Potter, 220 Fed. Appx. 120, 127 (3d Cir. 2007).

Plaintiff again resorts to his speaking up at the staff meeting on July 20, 2016, as the genesis for his claim. He highlights his speaking to staff about being told they could process voter registrations without social security numbers and he "told the staff about the law against

voter registration quotas in Pennsylvania." Statement of Material Facts (Doc. 34) at p. 4, ¶ 11. He did so because "[e]ven though Zach said in his emails that he agreed with me I simply didn't trust Zach not to fire black workers illegally over quotas." Id. In doing so plaintiff believes he was not "being disruptive in any way" and he was thanked by his co-workers for telling them these things. Id. When he returned from a successful day of work out in the field, he was fired. "And yes [plaintiff does] think this was retaliation for trying to protect black workers." Id. at ¶ 12.

Title VII makes it unlawful for an employer to discriminate against an employee because the employee has made a charge of discrimination or opposed a discriminatory policy or practice. Slagle v. County of Clarion, 435 F.3d 262, 266 (3d Cir. 2006) (Anti-retaliation provision protects those who participate in certain Title VII proceedings and those who oppose discrimination believed to be unlawful under Title VII.); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997); 42 U.S.C. § 2000e-3(a). It also protects employees who oppose discrimination through "informal protests of discrimination practices, including making complaints to management." Curay-Cramer v. Ursuline Acad. of Wilmington, 450 F.3d 130, 135 (3d Cir. 2006). Its protections are intended to be broad and extend to any form of opposition to practices made illegal by Title VII. See Crawford v. Metropolitan Gov't of Nashville and David Cty, 129 S. Ct. 846, 851 (2009) (noting that where an employee speaks up about discriminatory conduct in the workplace reported by a fellow employee, "[t]here is, then, no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

Although Title VII's protections are broad, its anti-retaliatory provision does not protect an employee from all forms of retaliation. Title VII "does not set forth a general civility code for the American workplace." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal citations omitted). Furthermore, "simply opposing an employment practice does

not rise to the level of a protected activity." <u>Zappan v. Pa Board of Probation and Parole</u>, 152 Fed. Appx. 211, 218 (3d Cir. 2005) (citing <u>Clark County Sch. Dist. V. Breeden</u>, 532 U.S. 268, 271 (2001). Instead, the employee must hold an objectively reasonable belief, in good faith, that the challenged activity violates Title VII. <u>Clark County</u>, 532 U.S. at 271.

Again, the only aspect of the events of July 20, 2016, that interjects race into the equation is plaintiff's perception that Reider was out to fire workers for not meeting quotas. And plaintiff assumes that race was at the base of this purported desire because the staff was almost all African Americans and Reider was Caucasian. Assuming that plaintiff's addressing the staff was not disruptive, as plaintiff insists, plaintiff's factual allegations fail to identify activity that is protected conduct under the protections afforded by the anti-retaliation provisions advanced in support of the claim. Plaintiff's opposition to enforcing quotas and directions to staff that they could take and process registrations without the social security numbers of the applicants is opposition to an employment practice. But it does not give rise in itself to an objectively reasonable belief, in good faith, that the challenged activity violates Title VII, the PHRA or § 1981. Only plaintiff's subjective perception interjects racial animus into the mix.

Plaintiff's perception that Reider would fire his African American co-workers for not meeting quotas because they were black and would not have done so if they were Caucasian is based on nothing more than rank speculation. Such speculation cannot serve to establish a plausible claim for retaliation. Consequently, defendant is entitled to dismissal of this claim as well.

Based on the foregoing, plaintiff has failed to set forth a plausible showing of claims for race discrimination or retaliation based on race. His claims predicated on such allegations pursuant to § 1981, Title VII and the PHRA will be dismissed.

Plaintiff's amended complaint references "the state's Whistleblower law." His related submissions claim that the decision to terminate plaintiff was done in violation of such law. Plaintiff does not set forth a separate count for a violation of any such law, and therefore the court can only speculate as to the statutory foundation for any such claim. Under these circumstances the court is unable to ascertain whether there is any plausible basis for plaintiff's

further pursuit of such a claim. Nevertheless, because plaintiff's § 1981 and employment-based discrimination claims must be dismissed, the court will decline to exercise jurisdiction over any remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). See Stehney v. Perry, 101 F.3d 925, 939 (3d Cir. 1996) (district court properly may decline jurisdiction over pendant state law claims where federal claims have dropped from the case prior to trial, the parties will not be prejudiced by the dismissal of the state law claims, and the interests of judicial economy will be served); Queen City Pizza, Inc. v. Dominos' Pizza, Inc., 124 F.3d 430, 444 (3d Cir. 1997) (decision to dismiss state law claims where all federal claims have been dismissed "is committed to the sound discretion of the district court").[2]

For the reasons set forth above, plaintiff's claims for disparate treatment and retaliation based on race will be dismissed with prejudice and any other state law claim in plaintiff's amended complaint will be dismissed without prejudice to plaintiff seeking appropriate recourse in state court. An appropriate order will follow.

Date: March 17, 2020

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc: Philip Shropshire
    740 Franklin Avenue
    Pittsburgh, PA 15221
    (*Via First Class Mail*)

    Jennifer S. Park, Esquire
    Alex M. Lacey, Esquire
    Kelsey J. Gdovin, Esquire
    (*Via CM/ECF Electronic Mail*)

---

[2] Prejudice is not a matter of concern here because plaintiff may pursue any other legitimate claims he might have by complying with 42 Pa. C. S. § 5103.